(312 P.3d 385)
No. 108,987

KELLI B. DUMLER, *Appellant*, v. JOHN CONWAY, and
WENTZ ENTERPRISES, LLC, *Appellees*.

Opinion filed October 25, 2013.

*Brian C. Wright*, of Wright Law Office, Chartered, of Great Bend, for appellant.

*Patrick J. Murphy* and *Bradley J. Raple*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Wichita, for appellee John Conway.

*Mickey W. Mosier* and *Paula J. Wright*, of Clark, Mize & Linville, Chartered, of Salina, for appellee Wentz Enterprises, LLC.

Before MCANANY, P.J., GREEN and HILL, JJ.

HILL, J.: Kelli B. Dumler appeals the dismissal of her personal injury lawsuit. She was injured when her car struck some mud on the roadway adjacent to a field where ensilage was being harvested. Not knowing exactly who left the debris on the roadway, Dumler sued John Conway, the farmer who owned the field where the

ensilage was being harvested. When Conway later raised the defense that he was not liable for the negligence of Wentz Enterprises, LLC, an independent contractor he had hired to harvest the ensilage, Dumler sued Wentz as well. The district court granted Conway summary judgment, holding he was not liable for Wentz' negligence. The court also granted summary judgment to Wentz based on the statute of limitations because more than 2 years had elapsed from the date of the accident and the date Dumler sued Wentz.

*A car wreck occurs in rural Kansas at harvest time.*

On November 10, 2008, Dumler was driving her vehicle on a highway in rural Osborne County. She lost control of her vehicle when her car encountered mud and field debris on the roadway. She incurred serious personal injuries and suffered property damage, as well. Two years later, on November 10, 2010, Dumler filed suit in the Osborne County District Court against John Conway, who owned the property near the scene of her accident. Dumler alleged that either Conway or his employees created the mud and debris on the roadway by crossing the road with farm machinery. Dumler alleged Conway should have known this was an unreasonable hazard and claimed he was negligent in failing to take reasonable steps to prevent the build-up of mud and debris on the roadway.

Initially, Conway moved to dismiss Dumler's claim, contending that on the date of Dumler's accident, he had hired an independent contractor, Wentz Enterprises, LLC to cut fodder to make ensilage on his farm. Conway asserted he had no control over the method or manner selected by Wentz to perform the job. Conway also claimed he did not drive any of his own vehicles or equipment across the roadway on the date of Dumler's accident. Conway argued that under Kansas law, he is not liable for the negligence of an independent contractor.

Soon after the filing of that motion, Dumler moved to amend her petition to assert a claim against Wentz. She claimed that before she filed suit against Conway, she had communications with Conway or his insurer on two occasions. Dumler said that at no

time did either provide any information regarding the existence of Wentz. Dumler claimed she was "entirely unaware" of Wentz and said she believed Wentz may be responsible for her accident. The district court denied Conway's motion to dismiss and granted Dumler leave to amend her petition to add Wentz as a defendant.

Eventually, Wentz moved for summary judgment, arguing Dumler's claim must be dismissed because it was filed outside the applicable statute of limitations. Wentz alleged it received no notice of Dumler's initial petition in the case until April 2011. Further, it was not served with a summons and a copy of the petition until September 17, 2011. In its motion, Wentz contended that under Kansas law, the statute of limitations on negligence claims is 2 years. Wentz argued that here, the limitation period began to run on Dumler's claim on November 10, 2008 (the date of her accident), and the limitation period expired on November 10, 2010. Wentz argued Dumler did not make a claim against Wentz until September 14, 2011, well after the 2-year statute of limitations had expired.

Dumler countered by arguing that the statute of limitations did not begin running on her claim until she first became aware of Wentz' involvement in the case—that is when Conway filed his motion to dismiss. Dumler asserted that in order for her to have reasonably ascertained her fact of injury as required by the limitations statute, she needed to know *who* was responsible for causing her injury. Dumler did concede, however, that her amended petition naming Wentz did not "relat[e] back" to her original petition.

Not wanting to be left alone, Conway also moved for summary judgment, essentially repeating the arguments he made in his motion to dismiss—*i.e.*, that Wentz was an independent contractor and under Kansas law one who hires an independent contractor is not liable for the negligence of that contractor.

In response to Conway, Dumler based her theory of liability on the Restatement (Second) of Torts § 413 (1964), one of the few exceptions to the general rule that an owner is not liable for the negligent acts of an independent contractor. She contends Conway should have recognized his contract harvester, Wentz, was likely to

create a peculiar risk of physical harm to others by leaving mud and debris on the roadway adjacent to the field being harvested. And, because Conway either in his contract with Wentz did not require Wentz to take precautions or Conway himself failed to exercise reasonable care to provide in some other manner the taking of such reasonable precautions, Conway is liable for the physical harm caused by Wentz.

Dumler argued this exception applies because 1 year prior to Dumler's accident, one of Conway's workers was leaving excessive mud on the roadway near Conway's property and a Kansas Department of Transportation employee was dispatched to Conway's home to tell him he needed to remove the mud. The Department had received a report about the mud, and after the employee spoke with Conway, either Conway or his employee cleaned the mud from the roadway.

The district court granted summary judgment to both Conway and Wentz. Concerning Conway's motion, the court held the "peculiar risk doctrine" did not apply, so that Conway was not liable for the negligent acts of his independent contractor, Wentz. For Wentz' motion, the court held the statute of limitations began to run on Dumler's tort action on the date of her accident, so that Dumler's legal action against Wentz was filed outside the 2-year limitation period.

*We repeat our rule on summary judgments.*

When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. The district court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, the adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, the same rules apply; summary judgment must be denied

if reasonable minds could differ as to the conclusions drawn from the evidence. *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011).

In this appeal we begin with Conway's summary judgment.

*We are not convinced that § 413 applies here.*

The general rule of liability is that when a contractee lets out work to another and reserves no control over the work or the workers, the relation of contractee and independent contractor exists. The contractee is not liable for the negligence or improper execution of the work by the independent contractor. *Falls v. Scott*, 249 Kan. 54, 59, 815 P.2d 1104 (1991). Dumler seeks application of an exception to this rule as stated in the Restatement (Second) of Torts § 413.

No Kansas appellate case has recognized a cause of action based upon § 413 of the Restatement (Second) of Torts. It is a rule of vicarious liability that, for policy reasons, an employer cannot shift the responsibility for the proper conduct of the work to the contractor. We repeat the section in its entirety:

"§ 413. Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor

"One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

(a) fails to provide in the contract that the contractor shall take such precautions, or

(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions."

We find a portion of the official comment that follows the section in the Restatement illuminating.

"b. . . . This Section has no reference to such a general anticipation of the possibility that the contractor may in some way be negligent. It is not concerned with the taking of routine precautions, of a kind which any careful contractor could reasonably be expected to take, against all of the ordinary and customary dangers which may arise in the course of the contemplated work. Such precautions are the responsibility of the contractor; and if the employer has exercised reasonable care to employ a contractor who is competent and careful (see § 411), he is

not required to provide, in the contract or otherwise, that the contractor shall take them.

"This Section is concerned with special risks, peculiar to the work to be done, and arising out of its character, or out of the place where it is to be done, against which a reasonable man would recognize the necessity of taking special precautions. *The situation is one in which a risk is created which is not a normal, routine matter of customary human activity*, such as driving an automobile, but is rather a special danger to those in the vicinity, arising out of the particular situation created, and calling for special precautions. 'Peculiar' does not mean that the risk must be one which is abnormal to the type of work done, or that it must be an abnormally great risk. It has reference only to a special, recognizable danger arising out of the work itself." (Emphasis added.) Restatement (Second) of Torts § 413, comment b.

Examples of jobs with peculiar risks given in the Restatement are demolishing buildings, tearing down walls, and excavations. See Restatement (Second) of Torts § 413, comment c. We must now examine the job at hand here, cutting fodder for ensilage.

By definition, harvesting in this fashion involves machines chopping green fodder for storage in a silo. Machines cut and chop the plants in the field, and then other machines transport the fodder to the silo. Obviously, at times, the harvest field will be muddy, and, as a result, the tractors and wagons or trucks used for transport can leave mud on the roadway. It is also true that, at times, there will be no mud in the fields and the implements will leave no mud on the road. We note also that Dumler has not shown that leaving mud or field debris on the roadway is unique to harvesting fodder for making ensilage, the job Conway hired Wentz to do. In other words, this is not a peculiar risk. Leaving mud or field debris on a roadway can be a normal result of many types of farm work not just harvesting ensilage. There is nothing in the record that leads us to believe that harvesting ensilage will *always* have an unreasonable risk of creating dangerous driving conditions on this roadway next to Conway's field which is necessary to support a claim under the Restatement (Second) of Torts § 413.

Such work is not comparable to razing a building next to a public sidewalk or tearing down walls next to occupied buildings. Using the words found in the comment, it appears Wentz' job is a normal, routine matter of customary human activity with attendant normal

routine risks. We simply see no evidence to reasonably support a conclusion that Conway employed Wentz to do work which Conway should have recognized as likely to create a peculiar unreasonable risk of physical harm to others if special precautions were not taken. It is that knowledge of risk that creates the exception to the general rule of nonliability of one who hires an independent contractor. Not being involved in the execution of the work or supervising the activities, only owners who have knowledge of the peculiar risk or reasonably should have known of the risks are liable under § 413.

Clearly there is no evidence to reasonably support a finding here that the operation of farming equipment across the roadway was *likely to create* an unsafe build-up of mud. Dumler presented no evidence that would demonstrate, for example, that farming equipment routinely leaves excessive mud and debris that is unsafe. To the contrary, the Department of Transportation representative testified that although he sees mud on the highways during the ensilage-cutting time of the year, it is "out of the ordinary" and it does not happen often.

In addition, there is no evidence to reasonably support a finding that Conway *should have recognized* that mud on the roadway was likely to create a peculiar risk of harm to others. Even assuming, as the district court correctly did, that Conway was aware of the mud incident 1 year prior to Dumler's accident, one cannot reasonably conclude that a single, isolated incident—which occurred 1 year earlier—should have caused Conway to recognize that mud on the roadway is always a risk to the public that must be dealt with specially. Dumler does not dispute that Conway had no control over the equipment used by Wentz to perform the work, the day or time the work was to be performed, or the manner in which Wentz would perform the work.

One case dealing with inherently dangerous work, covered by a different section of the Restatement, makes a point that casts light on this case. In *McCubbin v. Walker*, 256 Kan. 276, 296-97, 886 P.2d 790 (1994), the court determined, as a matter of law, that generally tree trimming is not an inherently dangerous activity under the Restatement (Second) of Torts § 427 (1964). The court

reasoned it would not take an expert witness to determine that if branches are cut from a tree, they will fall to the ground and increase the risk to a person below. But the court said an undertaking cannot be termed inherently dangerous merely because it may *possibly* produce injury. All of these rules are to be interpreted with reason and common sense.

Applying that lesson to this case, we see that there is also no evidence to reasonably support a factual finding that the existence of mud on a roadway is *likely to create* a peculiar risk of physical harm. Similar to the *McCubbin* ruling with regard to tree trimming, the transportation of farming equipment across a roadway—which could *possibly* leave mud and debris—is an everyday activity that can be accomplished safely and does not inherently pose a physical risk. See 256 Kan. at 297.

When it ruled on this matter, the district court recognized that the only controverted fact was whether the prior mud report to the Department of Transportation occurred 3 years prior to Dumler's accident or 1 year prior to the accident. The court ultimately resolved this in favor of Dumler in light of the summary judgment standard, stating it would assume the prior incident occurred 1 year before Dumler's accident. In refusing to apply the peculiar risk doctrine in Dumler's case, the district court reasoned that all Conway knew was there had been a prior incident 1 year prior to Dumler's accident. The court noted that a representative of the Department of Transportation testified in a deposition that mud accumulation was infrequent. The court also noted there was no evidence Conway knew about the existence of mud on the date of Dumler's accident.

We note that Kansas courts have routinely analyzed and applied the Restatement (Second) of Torts § 427, which the courts refer to as the inherently dangerous activity doctrine. Under that section, one who employs an independent contractor to do work involving a special danger to others, in which the employer knows the danger to be inherent in the work, is liable for physical harm caused to others by the contractor's failure to take reasonable precautions against such danger. The Supreme Court touched on that doctrine in the case cited by the district court.

In *Falls*, the case cited by the district court, a man was injured when he was struck by debris coming from a "brush hog" being operated by an independent contractor. On appeal, the Supreme Court overturned the court's order granting summary judgment and held that the question whether the use of the brush hog was an inherently dangerous activity was one that should have been determined by a jury since the facts were disputed. 249 Kan. at 61-62. *Falls* is certainly not controlling here as that court was dealing with a different section of the Restatement (Second) of Torts and the facts were in dispute. There is no dispute about the facts here except for the exact time of the call from the Department of Transportation.

The district court correctly determined the peculiar risk doctrine does not apply in this case. Thus, the district court did not err in granting summary judgment to Conway based on the general rule that a contractee is not liable for the negligent acts of an independent contractor.

*Dumler did not make a timely claim against Wentz.*

The parties agree that the relevant statute of limitations is found at K.S.A. 60-513(a)(2) and (b), which provide that personal injury actions

"shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action."

Dumler's accident occurred on November 10, 2008. Dumler filed her petition against Conway 2 years later, on November 10, 2010. When Conway moved to dismiss Dumler's claim on March 7, 2011, he implicated Wentz. After learning that, Dumler moved for leave to amend her petition to assert a claim against Wentz. Leave was granted, and Wentz was served on September 17, 2011.

To us, Dumler argues the *cause* of her injury was not reasonably ascertainable until Conway revealed who was responsible for the injury. Dumler argues that in a situation like hers, where her injury

was caused by a defendant whose identity was unknown to her, the statute of limitations did not commence until she became aware of the responsible party.

Unfortunately for Dumler the statute plainly speaks to the contrary. K.S.A. 60-513(a)(2) and (b) provide that personal injury actions shall not be deemed to have accrued until the *act* giving rise to the cause of action *first causes substantial injury*; however, if the fact of injury is not reasonably ascertainable until sometime after the initial act, the period of limitation shall not commence until the *fact of injury* becomes reasonably ascertainable to the injured party.

The clear language of the statute indicates the limitation period is triggered by both the *act* which causes injury and the existence of substantial injury. It is only when the injured party is unaware of the fact of injury (*i.e.,* unaware that he or she has been injured) that the limitation period starts later. The statute contains no language requiring the identification of the party who caused the injury. The only "triggering events" under the statute are (1) the act which caused the injury; (2) the existence of substantial injury; and (3) the injured party's awareness of the fact of injury. Here, the act that caused the injury was allegedly the deposit of mud and debris on the roadway. The injured party, Dumler, became aware of the fact of her injury on the date of the accident when she was injured.

The basic rule of statutory interpretation is that the intent of the legislature governs when that intent can be ascertained. When statutory language is plain and unambiguous, the courts are not free to speculate about legislative intent and may not read into the statute language not found there. *State v. Mishmash*, 295 Kan. 1140, 1142, 290 P.3d 243 (2012). Here, the clear language of the statute indicates the limitation period commences with the *act* which led to injury, the existence of substantial *injury*, or the injured party's awareness of the *fact of injury*. Dumler's argument that the period does not commence until the injured party becomes aware of *who* caused the injury is unsupported by caselaw.

Dumler cites *Gilger v. Lee Constr., Inc.*, 249 Kan. 307, 820 P.2d 390 (1991), as support for her position that the fact of injury becomes reasonably ascertainable when the plaintiff knows an injury

has occurred and knows "the cause of injury was the defendant's negligence." Dumler turns this into: "Knowing the cause of injury requires knowing who could be responsible for the motivating force that led to the injury." Dumler says the logic of *Gilger* should be applied in these "unique circumstances," where her injury was caused by a defendant whose identity was known by Conway but unknown to her.

We are not convinced. In *Gilger*, the plaintiffs moved into a house in 1981 and began suffering health problems within the first year. Over the next several years, one plaintiff consulted various physicians in an effort to determine the cause of her health problems. When the plaintiffs suspected a gas problem and consulted the defendants, the defendants failed to discover that the house had been improperly vented. The plaintiffs were not informed of the improper venting until 1985, and they brought suit in 1987.

The facts in *Gilger* are remarkably different than the facts of this case. In *Gilger*, there was a question as to when the plaintiffs knew they had been injured (*i.e.*, the fact of injury). There, the plaintiffs did not necessarily know they had been injured by the defendants. There was evidence suggesting the plaintiffs' symptoms could have merely been the result of personal health problems as opposed to something the defendants did wrong. Thus, the question in that case was when the plaintiffs' "fact of injury became reasonably ascertainable" as contemplated by the plain language of K.S.A. 60-513(b). 249 Kan. at 312. In fact the *Gilger* court noted: "[I]n a tort action where the evidence is in dispute as to when substantial injury first appears or becomes reasonably ascertainable, the issue is for determination by the trier of fact. [Citations omitted.]" 249 Kan. at 311.

Here, there is no dispute that Dumler knew she was injured on the date of her accident. This knowledge of her "fact of injury" is the only thing that matters under K.S.A. 60-513(b). While *Gilger* indeed seems persuasive at first glance, Dumler neglects to notice that *Gilger* not only reaches a fair result, but it also fails to run afoul of the clear language of K.S.A. 60-513(b). The statute only requires ascertainment of the "fact of injury" for the limitation period to commence.

Along this same line, in a letter of additional authority, Dumler cites this court's recent opinion in *Michaelis v. Farrell*, 48 Kan. App. 2d 624, 296 P.3d 439 (2013), arguing that a plaintiff must know the defendant *who caused* his or her injury in order for the statute of limitations to commence. In *Michaelis,* a question arose about whether the plaintiff knew he had been injured by the tortfeasor's act. The plaintiff received an electrical shock when he jumped into the water on July 2, 2005, but was not diagnosed with posttraumatic stress disorder brought on by the electrical shock until late in 2009. In other words, the plaintiff did not know the cause of his problems until he was so advised by the doctors.

In addition, Dumler cited *Lehmann v. Young*, No. 97,602, 2007 WL 3146699 (Kan. App. 2007) (unpublished opinion). A chiropractic malpractice case, *Lehmann* also involved a question of whether the plaintiff knew he had been injured. That fact pattern certainly differs from this case because Dumler knew she was injured, and like *Gilger*, the case is unpersuasive here.

In a final effort to persuade us, Dumler argues that when the district court rejected her analysis on this issue, it imposed an "additional burden" not required by statute. Dumler says some of the court's comments suggested she should have filed her claim against Conway well in advance of the deadline of the statute of limitations in order to avoid the problem she faced here. Dumler says the district court was essentially requiring her to file her action more quickly than required by law.

Indeed, the judge commented about Dumler's failure to file her petition against Conway until the last day within the limitation period. However, the court's comments appear to be made in passing and pertained to the fact that Dumler's amended petition could not relate back to her original petition because of her decision to file the original petition on the last possible day. The comments were not the basis for the court's decision on the statute of limitations issue. The court's decision was based on the language of the statute and its analysis of *Gilger.*

To sum up, we hold the district court did not err in determining that Dumler's claim against Wentz was barred by the statute of limitations because she failed to make her claim within 2 years of

the date of her accident—when she first had substantial injury and her fact of injury became known.

Affirmed.