No. 119,611

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

FOXFIELD VILLA ASSOCIATES, LLC, et al.,
*Appellants*,

v.

LORI D. ROBBEN, et al.,
*Appellees*.

SYLLABUS BY THE COURT

1.

Under K.S.A. 60-513(a)(4), a plaintiff must commence his or her negligence claims within two years from the date of the negligent act.

2.

Under K.S.A. 60-513(b), the cause of action listed in K.S.A. 60-513(a) "shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party."

3.

The statute does not require the identification of the party who caused the injury. Instead, the only triggering events under the statute are (1) the act which caused the injury; (2) the existence of substantial injury; and (3) the injured party's awareness of the fact of injury.

4.

The statute of limitations begins to run when "*the fact of injury*" becomes reasonably ascertainable to the injured party.

5.

In some instances, a statute of limitations can be stopped from running—or "tolled"—for some period of time. Kansas courts have held fraud and fraudulent concealment can toll a statute of limitations.

6.

In order to toll a statute of limitations, the party's concealment must be fraudulent or intentional and, in the absence of a fiduciary or confidential relationship, there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action.

7.

Under K.S.A. 33-204(a)(1), a creditor may recover for a fraudulent transfer of property when the debtor transfers the property with actual intent to hinder, delay, or defraud any creditor of the debtor.

8.

A fraudulent transfer claim based on actual intent may still survive the four-year limitation period because K.S.A. 33-209(a) includes a savings clause. The savings clause permits a creditor to proceed on a claim of actual intent when the creditor brings the claim within one year after the creditor discovered or could reasonably have discovered the transfer.

9.

A fraudulent transfer claim based on a lack of reasonable value is subject to the limitations set out in K.S.A. 33-209(b), not K.S.A. 33-209(a). Under K.S.A. 33-209(b), the creditor must bring a claim within four years of the transfer or the creditor's claims are extinguished, even if the transfer was later discovered or could have reasonably been discovered.

10.

A claim for civil conspiracy requires the commission of some wrong giving rise to a cause of action independent of the conspiracy.

11.

A claim for aiding and abetting requires the commission of a wrongful act that causes an injury to a party.

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed August 2, 2019. Affirmed.

*John M. Duggan* and *Deron A. Anliker*, of Duggan Shadwick Doerr & Kurlbaum LLC, of Overland Park, for appellants.

*Melissa Hoag Sherman*, of Spencer Fane LLP, of Overland Park, for appellees.

Before SCHROEDER, P.J., GREEN and POWELL, JJ.

SCHROEDER, J.: Foxfield Villa Associates, LLC; Bartlett Family Real Estate Fund, LLC; PRES, LLC; Ernest J. Straub III; and Richard A. Bartlett (collectively FVA) appeal the district court's summary judgment order denying FVA's various claims of negligence, fraudulent transfers, conspiracy to commit fraudulent transfers, and aiding and abetting fraudulent transfers. First, FVA alleges its negligence claims survive

3

summary judgment because it could not have reasonably ascertained it was injured within the two-year statute of limitations and this entitles FVA to equitable estoppel. Next, FVA argues its fraudulent transfer claims survive summary judgment because FVA could not have reasonably discovered the transfers until after it filed suit in this case. Finally, FVA asks this court to recognize two causes of actions never previously recognized in Kansas—conspiracy to commit fraudulent transfers and aiding and abetting fraudulent transfers. Upon review of the record, including the parties' briefs, we find no errors by the district court. We affirm.

FACTS

The parties to this action were involved in a complex and unsuccessful real estate project that resulted in the loss of millions of dollars, two federal lawsuits, a bankruptcy, and two lawsuits in Johnson County District Court, one of which resulted in this appeal.

Lori D. Robben is a realtor who owns Prestige Real Estate Services, LLC, and she is trustee of the "First Amended and Restated Lori D. Robben Trust Agreement Dated November 15, 2010."

Lori's husband is Paul Robben. Paul had ownership interests in Foxfield Associates, LLC (FA) and owned RDC Holdings, LLC (RDC). RDC and Ernest J. Straub III formed PRES, LLC (PRES). Richard and Dena Bartlett own Bartlett Family Real Estate Fund, LLC. In 2007, PRES, which included RDC, and the Bartlett Family Real Estate Fund, LLC formed Foxfield Villa Associates, LLC (Foxfield). Later RDC withdrew from PRES and FVA.

Foxfield closed two real estate transactions with FA on March 24, 2008, in Olathe, Kansas. Foxfield purchased 38 vacant lots. They also bought 9.1 acres to develop 40

4

additional lots. Bank of Blue Valley (BBV) loaned Foxfield $1,440,000 for the purchase and future development of the 9.1 acres. Foxfield defaulted on the loan in 2010.

FVA first sued BBV in Johnson County District Court on September 1, 2011. BBV brought counterclaims for FVA's default. In August 2012, FVA sued BBV in the United States District Court for the District of Kansas. In both lawsuits, FVA alleged BBV failed to disclose information about Paul's financial condition. In February 2013, FVA amended its federal complaint, brought claims against Paul, and alleged he made numerous misrepresentations or omissions during the real estate purchase, including misrepresentations about his license as a real estate broker.

In July 2013, Paul testified he was the transaction broker for the agreement between FVA's members and BBV.

In 2015, FVA amended its federal complaint again, alleging their relationship with Paul and RDC began in 2007, and his alleged misconduct occurred before the real estate transaction in March 2008. Meanwhile, Paul filed for bankruptcy, and the United States Bankruptcy Court for the District of Kansas eventually entered a discharge of debtor in Paul's favor. Paul later moved to dismiss the federal complaint against him based on this bankruptcy discharge.

The district court in the first lawsuit eventually ruled against FVA's claims and in favor of BBV's counterclaims, awarding $2,351,713.36 against Foxfield for the BBV loan and $360,000 and $720,000 against Straub and Bartlett, respectively, for their personal guaranties.

On August 31, 2016, FVA filed this second lawsuit in district court naming Lori D. Robben, her company Prestige, and her trust as defendants (Lori). FVA alleged in July 2013, Paul told them he was a Kansas real estate agent and broker, but he was acting as

5

the transaction broker under Lori's supervising authority during the 2008 transaction. FVA alleged Lori was liable for negligent supervision, vicarious liability, aiding and abetting negligence, common-law negligent supervision, fraudulent transfer of three properties, conspiracy to commit fraudulent transfer, and aiding and abetting fraudulent transfer.

Lori moved for summary judgment and the district court granted Lori's motion, denying all of FVA's claims. Where needed, we have provided additional facts below.

ANALYSIS

*Lori was entitled to summary judgment against FVA's negligence claims.*

The district court granted Lori summary judgment because it found the two-year statute of limitations barred FVA's claims of negligence, negligent supervision, vicarious liability, aiding and abetting negligence, and common-law negligent supervision. FVA argues the district court erred in granting summary judgment.

To review the district court's decision, we apply the summary judgment standards:

> ""Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment

6

must be denied.'" [Citation omitted.]" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

An issue of fact is not genuine unless it has legal controlling force as to the controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. In other words, if the disputed fact, however resolved, could not affect the judgment, it does not present a "genuine issue" for purposes of summary judgment. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106 (2013). If a district court reaches the correct result, its decision will be upheld even though it relied upon the wrong ground or assigned erroneous reasons for its decision. *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015).

FVA's claims also require statutory interpretation, a question of law subject to unlimited appellate review. See *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. 304 Kan. at 409. Where there is no ambiguity, the court need not resort to statutory construction. 304 Kan. at 409.

*FVA's negligence claims are barred.*

FVA argues the district court erred in applying the two-year statute of limitations to its various negligence claims because FVA could not reasonably ascertain Lori acted negligently until August 2016. Although we need not apply the same analysis the district court used, the district court correctly found FVA failed to timely raise its negligence

7

claims. See *Gannon*, 302 Kan. at 744 (upholding the district court's decision when the decision reaches the correct result, even if based on the wrong grounds).

Under K.S.A. 60-513(a)(4), a plaintiff must commence his or her negligence claims within two years from the date of the negligent act. However, a plaintiff's negligence claims

> "shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party." K.S.A. 60-513(b).

The phrase "reasonably ascertainable" presents the injured party with a duty to reasonably investigate available sources containing facts relevant to the party's claim. *Davidson v. Denning*, 259 Kan. 659, 675, 914 P.2d 936 (1996). This is an objective standard based on examining the surrounding circumstances. *P.W.P. v. L.S.*, 266 Kan. 417, 425, 969 P.2d 896 (1998).

In *Dumler v. Conway*, 49 Kan. App. 2d 567, 576, 312 P.3d 385 (2013), a panel of this court analyzed the plain language of K.S.A. 60-513(b) and found the limitation period commences when the party was injured and when the party was aware he or she was injured. 49 Kan. App. 2d at 576. There, Dumler lost control of her car and sustained serious injuries when her car encountered mud and debris on a rural highway. Ensilage had been harvested in a field adjacent to the highway. Two years later, Dumler sued the farmer who owned the land alleging he negligently created the highway hazard during the ensilage harvest. The farmer argued he was not liable because he had hired a contractor to harvest the ensilage. Dumler brought the contractor into her suit after the two-year statute of limitations ran. The district court granted summary judgment against Dumler, finding the farmer was not liable for the contractor's negligence and the two-year statute of limitations barred Dumler's claims against the contractor. Dumler appealed and argued

the cause of her injury was not reasonably ascertainable until the farmer revealed the contractor was responsible for Dumler's injury.

Based on the plain language of K.S.A. 60-513(b), the panel affirmed the lower court's decision. 49 Kan. App. 2d at 576-79. In reviewing K.S.A. 60-513(b), this court found the limitation period is triggered by the act which causes the injury and the existence of a substantial injury. 49 Kan. App. 2d at 576. This court also noted the statute does not require the identification of the party who caused the injury. Instead, the "only 'triggering events' under the statute are (1) the act which caused the injury; (2) the existence of substantial injury; and (3) the injured party's awareness of the fact of injury." 49 Kan. App. 2d at 576.

Here, FVA's negligence claims are barred by the two-year statute of limitations. The act causing FVA's injuries happened on or before March 24, 2008. FVA, BBV, and Paul negotiated the real estate transaction in 2008, finalizing it on March 24, 2008. In its federal and state lawsuits against Paul, FVA claimed Paul harmed FVA because he allegedly made material misrepresentations inducing FVA into the transaction. In this case, FVA claimed it was injured by Lori's negligent supervision, negligence as a transaction broker, and common-law negligent supervision of Paul. Lori's alleged negligence would have occurred when FVA, BBV, and Paul negotiated and completed the 2008 transaction, not later in time.

Even assuming FVA did not know of Lori's involvement until 2016, FVA's negligence claims are still barred under K.S.A. 60-513. FVA first sued BBV in district court on September 1, 2011. By the time FVA filed suit, FVA knew it was injured, but it did not know who caused the injury. FVA had a duty to reasonably investigate all available sources for facts relevant to its injuries. See *Davidson*, 259 Kan. at 675. FVA may not have known whether Lori caused FVA's injuries, but this is irrelevant under K.S.A. 60-513(b). See *Dumler*, 49 Kan. App. 2d at 576. At the very latest, the statute of

9

limitations begins to run when "*the fact of injury* becomes reasonably ascertainable to the injured party." (Emphasis added.) K.S.A. 60-513(b). The plain language of K.S.A. 60-513(b) indicates the limitation period begins once FVA knew it was injured, not when FVA discovered *who* injured it. See *Dumler*, 49 Kan. App. 2d at 576. We cannot read K.S.A. 60-513(b) as FVA does. To do so would impermissibly add language into the statute of limitations. See *Ullery*, 304 Kan. at 409.

FVA argues the question of when it was reasonably ascertainable it was injured is a fact question to be submitted to a jury. FVA is partially correct. The trier of fact weighs the disputed evidence to determine when a plaintiff's substantial injury first appears or becomes reasonably ascertainable. *Gilger v. Lee Constr., Inc.*, 249 Kan. 307, 311, 820 P.2d 390 (1991). Even so, Lori raised the statute of limitations as an affirmative defense. When a defendant does so, "summary judgment may be proper where there is no dispute or genuine issue as to the time when the statute commenced to run." 249 Kan. at 311. Here, summary judgment was appropriate because there are no facts disputing when FVA had reasonably ascertained it was injured. FVA filed its first lawsuit in 2011 alleging it was injured. At the very latest, FVA had reasonably ascertained it was injured when it filed the first lawsuit.

FVA also argues *Dumler* is inapplicable and cites to *Michaelis v. Farrell*, 48 Kan. App. 2d 624, 631, 296 P.3d 439 (2013). FVA's argument is unpersuasive. An electrical shock injured Michaelis, but there was a factual dispute about when he learned the electrical shock caused him to suffer brain damage. For five years after the shock, Michaelis' doctor claimed Michaelis' symptoms were not related to the incident. Upon additional testing, another doctor told Michaelis his symptoms were caused by the electrical shock. Based on the disputed facts, the *Michaelis* panel found the district court did not err in sending the fact question to the jury. 48 Kan. App. 2d at 636.

Unlike *Michaelis*, none of the parties here dispute when FVA learned it was injured. The only dispute FVA argues is when FVA learned Lori may have caused FVA harm. This disputed question of fact is immaterial to determining summary judgment. See *Northern Natural Gas Co.*, 296 Kan. at 934. The limitations period under K.S.A. 60-513(b) begins to run when "*the fact of injury* becomes reasonably ascertainable to the injured party." (Emphasis added.) Regardless of when FVA learned or could have learned Lori may have harmed FVA, FVA knew it was injured when it sued BBV in 2011. FVA failed to raise its negligence claims against Lori before the two-year statute of limitations ran. The district court did not err in finding K.S.A. 60-513(b) was applicable and applied to FVA's claims.

*FVA is not entitled to equitable estoppel.*

FVA argues equitable estoppel prevents the statute of limitations from applying to its negligence claims because Lori and Paul allegedly engaged in fraudulent concealment. FVA makes three unpersuasive arguments in support of equitable estoppel; we will address these in turn.

> *FVA presents no facts to establish Lori or Paul committed affirmative acts to limit FVA's discovery of alleged negligence.*

In some instances, a statute of limitations can be stopped from running—or "tolled"—for some period of time. Kansas courts have held fraud and fraudulent concealment can toll a statute of limitations. *Doe v. Popravak*, 55 Kan. App. 2d 1, 14, 421 P.3d 760 (2017). In order to toll a statute of limitations, the party's "'concealment must be fraudulent or intentional and, in the absence of a fiduciary or confidential relationship, there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action.'" 55 Kan. App. 2d at 14 (quoting *Friends University v. W.R. Grace & Co.*, 227 Kan. 559, 564, 608 P.2d 936 [1980]). This deception must be sufficient to lull the other party "into a false sense of security,

11

forestalling the filing of suit" until the statute of limitations has run. *Dunn v. Dunn*, 47 Kan. App. 2d 619, 639, 281 P.3d 540 (2012). When a party lacks an affirmative duty to disclose, the party's failure to disclose may not be enough to constitute fraudulent concealment.

"""[A]ny statement, word, or act which tends to the suppression of the truth renders the concealment fraudulent. In such cases, *by adding to the original fraud affirmative efforts to divert, mislead, or prevent discovery*, a continuing character is given to the original act which deprives it of the protection of the statute [of limitations] until discovery. Where some affirmative act of concealment takes place, it is not material whether the concealment was previous or subsequent to the accruing of the cause of action. *The question is whether there was a design to prevent the discovery of the facts which gave rise to the action, and whether the act operated as a means of concealment.*""" *Doe*, 55 Kan. App. 2d at 14-15.

FVA first argues Paul and Lori engaged in affirmative acts of fraudulent concealment entitling FVA to equitable estoppel. FVA alleges Paul's prior trial testimony induced it into believing Paul was the transaction broker and not a subordinate to Lori. In other words, FVA argues it relied on Paul's testimony when it concluded Paul had no supervisor. Unfortunately, FVA provides no citation to the appellate record to support this argument. By failing to cite to the appellate record, FVA waives this argument. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644-45, 294 P.3d 287 (2013) (party alleging error has the burden to designate facts in the record to support that claim; without such a record, the claim of error fails).

Careful review of the appellate record indicates Paul's testimony does not support FVA's argument. The parties only included a limited selection of Paul's testimony in the appellate record. In FVA's case against BBV and Paul, Paul testified about his role as the transaction broker in the 2008 negotiations. FVA now claims this testimony induced FVA to not file suit against Lori before the statute of limitations expired. FVA's argument

12

is unpersuasive. Nothing in Paul's testimony suggests he concealed he was supervised by Lori. FVA asked Paul if he had a duty as a transaction broker to discuss adverse details of the transaction with FVA. Paul testified he believed his duties as a transaction broker required him to act as a neutral party and not disclose adverse information about the transaction. FVA could have asked Paul about whether he had a supervisor, who his supervisor was, or whether he maintained his broker's license with a specific company. Based on the record before us, FVA did not.

FVA also argues, without citation to the record, Lori "dodged subpoena service and refused to attend depositions even after being served." This claim was denied by Lori during the oral argument. By failing to cite to the appellate record, FVA waives this argument. See *Friedman*, 296 Kan. at 644-45. Moreover, the record does not support this argument. As Lori explains in her brief, she and FVA agreed she did not need to attend depositions because she submitted other documents requested by FVA. Lori's explanation is supported by the appellate record.

> *FVA presents no facts or law to support finding Lori had a fiduciary relationship to disclose any supervisory relationship she had with Paul.*

FVA briefly argues Lori had a fiduciary duty to disclose her role as the transaction broker to FVA's 2008 negotiations. FVA alleges Lori's failure to disclose her role entitles FVA to estoppel of the statute of limitations. FVA fails to support this argument with any pertinent legal authority or cite to any facts in the record showing Lori was the transaction broker. FVA waives this argument. See *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't*, 301 Kan. 993, 1001, 348 P.3d 602 (2015) (failure to support a point with pertinent authority is akin to failing to brief the issue); *Friedman*, 296 Kan. at 644-45 (failure to provide factual support is a failure to brief). Moreover, the appellate record reflects Lori was not the transaction broker—Paul was and he testified

he was. In an affidavit submitted by Lori, she testified she was not involved in FVA's 2008 transaction.

> *FVA's equitable estoppel claim presents no fact questions appropriate for trial.*

Finally, FVA argues summary judgment on estoppel is inappropriate because estoppel is generally a question of fact appropriate for trial. Generally, equitable estoppel involves a question of fact. When those facts are disputed, or the necessary facts come from ambiguous documents, summary judgment is inappropriate. *Dunn*, 47 Kan. App. 2d at 639. Even so, summary judgment is appropriate when there is no genuine issue of material fact. *Northern Natural Gas Co.*, 296 Kan. at 934.

As explained in the previous sections, there is no genuine issue of material fact. FVA fail to support its argument with citations to the appellate record, and our careful review of the record shows no facts Paul or Lori engaged in affirmative acts to conceal Lori was Paul's supervisor. The district court did not err in denying FVA relief through equitable estoppel. See *Northern Natural Gas Co.*, 296 Kan. at 934.

*The district court did not err in granting summary judgment on FVA's fraudulent transfer claim.*

The district court granted summary judgment against FVA's fraudulent transfer claims because it found FVA's claims had been extinguished based on the Uniform Fraudulent Transfer Act (UFTA), K.S.A. 33-201 et seq. FVA argues the district court erred in granting summary judgment. To review these claims, we apply the summary judgment standards. *Patterson*, 307 Kan. at 621. This issue also requires statutory interpretation, a question of law subject to unlimited appellate review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be

14

ascertained. *State ex rel. Schmidt*, 303 Kan. 650, 659, 367 P.3d 282 (2016). An appellate court determines legislative intent through the statutory language enacted, giving common words their ordinary meanings. When the statute is plain and unambiguous, an appellate court refrains from reading something into the statute not readily found in its words. *Ullery*, 304 Kan. at 409.

Under the UFTA, there are several ways a creditor may pursue fraudulent transfer claims. See K.S.A. 33-204 to 33-205. FVA never explains which section of the UFTA it relied upon to bring its causes of action alleging Paul fraudulently transferred three properties to Lori's trust. Nevertheless, the district court found FVA's claims were extinguished under the UFTA for two reasons. First, the district court concluded the three property transfers all occurred more than four years before FVA filed suit against Lori, so they were time barred under either K.S.A. 33-209(a) or (b). Second, the district court found FVA was not entitled to relief under the savings clause found in K.S.A. 33-209(a) because FVA could have reasonably discovered the property transfers since they were all properly recorded through public records.

FVA makes several unpersuasive arguments about why its claims of fraudulent transfer should survive summary judgment. We address each of those below but ultimately find FVA is not entitled to relief from summary judgment.

*FVA's fraudulent transfer claims are extinguished under K.S.A. 33-209(b).*

Under K.S.A. 33-204(a)(1), a creditor may recover for a fraudulent transfer of property when the debtor transfers the property with actual intent to hinder, delay, or defraud any creditor of the debtor. K.S.A. 33-204(a)(1). The creditor may bring this claim regardless of whether the creditor's claim arose before or after the transfer of property. K.S.A. 33-204(a). To determine actual intent, courts may consider several statutory factors listed in K.S.A. 33-204(b), including whether the transfer was to an insider—a

15

relative—and whether the transfer was disclosed or concealed. K.S.A. 33-201(g); K.S.A. 33-204(b)(1), (3).

When a debtor does not receive reasonably equivalent value for the transfer, a creditor may recover for a fraudulent transfer in one of two ways—either under K.S.A. 33-204(a)(2) or K.S.A. 33-205(a). If the creditor's claim arose before the transfer, the creditor may use either statute. If the creditor's claim arose after the transfer, the creditor may only use K.S.A. 33-204(a)(2).

The UFTA also extinguishes the creditor's right to recover if the creditor fails to bring its claim within the time period set out in K.S.A. 33-209(a) and (b). When a creditor brings claims of actual intent under K.S.A. 33-204(a)(1), the creditor's claims are subject to the limitations in K.S.A. 33-209(a). The creditor's claim of actual intent extinguishes when the creditor fails to bring the claim within four years after the transfer. K.S.A. 33-209(a). However, K.S.A. 33-209(a) includes a savings clause allowing a claim made under K.S.A. 33-204(a)(1) to survive if the creditor brings the claim within one year after the creditor discovered or could reasonably have discovered the transfer.

Unlike a claim of actual intent, a creditor pursuing a claim under K.S.A. 33-204(a)(2) or K.S.A. 33-205(a) is subject to the limitations set out in K.S.A. 33-209(b), not K.S.A. 33-209(a). Under K.S.A. 33-209(b), the creditor must bring a claim under K.S.A. 33-204(a)(2) or K.S.A. 33-205(a) within four years of the transfer or the creditor's claims are extinguished. K.S.A. 33-209(b) does not include a savings clause. Therefore, when a creditor brings a claim against a debtor for failing to receive reasonable value for the transfer, the creditor may not recover even if the transfer was discovered, or could reasonably have been discovered, beyond the four-year limitation period of K.S.A. 33-209(b).

Here, FVA argues the district court erred because the deeds for the three transferred properties do not provide any notice about whether Paul received a reasonable value for transferring the property. Although FVA does not expressly say so, FVA must rely on K.S.A. 33-204(a)(2) or K.S.A. 33-205(a) because those statutes grant a creditor the right to recover for a fraudulent transfer when a debtor does not receive reasonable value for the transfer of property. See K.S.A. 33-204(a)(2) and 33-205(a). Accordingly, FVA's claims are subject to the four-year time limitations set out in K.S.A. 33-209(b). Based on the facts presented, FVA is not entitled to relief from the district court's summary judgment order because FVA's claims are extinguished by K.S.A. 33-209(b).

FVA alleged Paul, the debtor, fraudulently transferred his interests in three properties: Lakehouse, Loch Lloyd, and Leawood. As explained below, there was no genuine dispute these properties were transferred more than four years before FVA sued Lori for fraudulent transfers on August 31, 2016.

*Lakehouse*

FVA cannot recover for the transfer of the Lakehouse. Paul never had any interest in the Lakehouse property. Lori's trust directly acquired the Lakehouse property from a corporation in 2005 run by a party not involved in this suit. Paul is the only possible debtor to FVA, so the transfer of this property is not subject to recovery under the UTFA. See K.S.A. 33-204(a)(1).

*Loch Lloyd*

FVA alleges, without citation to the appellate record, Paul transferred his interests in Loch Lloyd to Lori's trust in August 31, 2012. By failing to cite to the appellate record, FVA has abandoned this argument. See *Friedman*, 296 Kan. at 644-45. Moreover, the appellate record does not support this argument. Instead, it shows Paul transferred his

17

interests in the Loch Lloyd property to Lori in August 2002 by quitclaim deed. A month later, he executed a waiver releasing and waiving all marital rights in Loch Lloyd. These instruments were properly recorded and available for public review in the recorder of deeds office in Cass County, Missouri.

Paul transferred all of his interests in this property by September 2002 when the documents were filed. FVA had four years to raise a claim for the transfer on this property. K.S.A. 33-209(b). FVA first brought this claim in August 2016 when it sued Lori, so FVA is not entitled to recover for fraudulent transfer on this property.

FVA also alleges Paul and Lori may have committed bank fraud when they signed bank documents because one document describes Loch Lloyd as "Real Property you already own." FVA's argument here is irrelevant and unsupported with any pertinent legal authority. FVA does not explain how alleged bank fraud—signing documents the lender required to process the loan—would grant Paul an interest in a property he transferred away in 2002. FVA waives this argument. See *University of Kan. Hosp. Auth.*, 301 Kan. at 1001.

### *Leawood*

FVA also cannot recover for the transfer on the Leawood property. Paul transferred his interest in the Leawood property in February 2011 when he and Lori conveyed their interests to Lori's trust by quitclaim deed. Paul also executed a waiver releasing his marital interest in the property. Both instruments were recorded with the Johnson County Register of Deeds in March of 2011. FVA had four years from March 2011 to raise a fraudulent transfer claim for this property, but FVA failed to do so. See K.S.A. 33-209(b).

*FVA's fraudulent transfer claims are not subject to the savings clause*

FVA argues its claims should survive the four-year limitation period because the deeds do not provide notice to anyone about whether Paul received reasonable value for his interests in the property. FVA cites the 2011 quitclaim deed transferring the Leawood property for $10 and "other valuable consideration." Accordingly, FVA argues it could not have reasonably discovered whether a fraudulent transfer occurred, so its claims must be preserved by the savings clause in K.S.A. 33-209(a). FVA is mistaken.

FVA's claims for fraudulent transfer arise under either K.S.A. 33-204(a)(2) or K.S.A. 33-205(a) because FVA argues Paul did not receive reasonable value for the transfers of property. But FVA's claims are not entitled to the savings clause in K.S.A. 33-209(a) because K.S.A. 33-209(a) only applies to a claim of fraudulent transfer based on actual intent. A fraudulent transfer claim based on a lack of reasonable value is subject to the limitations set out in K.S.A. 33-209(b), not K.S.A. 33-209(a). Under K.S.A. 33-209(b), the creditor must bring a claim within four years of the transfer or the creditor's claims are extinguished. K.S.A. 33-209(b) has no savings clause. Therefore, FVA's claims cannot be saved by the language in K.S.A. 33-209(a). Had the Legislature intended otherwise, it would not have crafted K.S.A. 33-209(b), but instead would have made all fraudulent transfer claims subject to K.S.A. 33-209(a). The Legislature instead chose to craft K.S.A. 33-209(b). Thus, FVA's claims are subject to a four-year limitations period. See *Cole v. Mayans*, 276 Kan. 866, 878, 80 P.3d 384 (2003) (inclusion of one thing implies the exclusion of another). To determine otherwise would require us to read something not readily found in K.S.A. 33-209(b). See *Ullery*, 304 Kan. at 409. FVA's claims are extinguished by the express language of K.S.A. 33-209(b), and the district court did not err in granting summary judgment.

19

*FVA is not entitled to relief under the savings clause in K.S.A. 33-209(a).*

FVA could arguably have raised its fraudulent transfer claims under K.S.A. 33-204(a)(1) instead of K.S.A. 33-204(a)(2) or K.S.A. 33-205(a). To recover for a fraudulent transfer based on actual intent, a creditor may bring a claim under K.S.A. 33-204(a)(1). To determine whether the debtor had actual intent, courts may consider the nonexhaustive list of factors, including whether the debtor transferred an interest to an insider—a relative—and whether the transfer was disclosed or concealed. K.S.A. 33-201(g); K.S.A. 33-204(b)(1), (3). Paul's transfers could be viewed as fraudulent transfers based on actual intent because he transferred the property to an insider—Lori and her trust.

Even so, a claim under K.S.A. 33-204(a)(1) is extinguished when the creditor fails to bring the claim within four years after the transfer. K.S.A. 33-209(a). That said, a claim based on actual intent may still survive because K.S.A. 33-209(a) includes a savings clause. The savings clause permits a creditor to proceed on a claim of actual intent when the creditor brings the claim within one year after the creditor discovered or could reasonably have discovered the transfer. K.S.A. 33-209(a). Presuming FVA's claims arise under K.S.A. 33-204(a)(1), we must next determine whether FVA is entitled to relief from the savings clause under K.S.A. 33-209(a).

Under this presumption, FVA's claims of fraudulent transfer for actual intent for the Lakehouse or Loch Lloyd properties fail. Paul, FVA's debtor, never obtained an interest in the Lakehouse property, so the UFTA does not apply. Additionally, Paul transferred his interest in Loch Lloyd in 2002, but Paul and FVA did not conduct business with each other until 2008. It strains belief to find Paul intended to defraud creditors by transferring a property six years before he went into business with those creditors.

20

This leaves the transfer of the Leawood property. Presuming FVA alleges this transfer is fraudulent under K.S.A. 33-204(a)(1), FVA still is not entitled to relief from summary judgment. The district court correctly found FVA could not rely on the savings clause in K.S.A. 33-209(a) because FVA could have reasonably discovered Paul's transfer through the properly recorded instruments with the register of deeds in Johnson County.

FVA argues the district court erred in relying on *Bi-State Dev. Co., Inc. v. Shafer, Kline & Warren, Inc.*, 26 Kan. App. 2d 515, 990 P.2d 159 (1999), because our Supreme Court abrogated *Bi-State* in *LCL v. Falen*, 308 Kan. 573, 422 P.3d 1166 (2018). We agree.

However, neither *Falen* nor *Bi-State* are applicable to FVA's fraudulent transfer claims. Both cases addressed claims of negligence. See *Falen*, 308 Kan. at 587-88; *Bi-State*, 26 Kan. App. 2d at 519. The *Falen* and *Bi-State* courts were asked to address when a party may reasonably ascertain it was injured. See *Falen*, 308 Kan. at 587; *Bi-State*, 26 Kan. App. 2d at 519. Those issues arise under the two-year statute of limitations in K.S.A. 60-513(a), not the savings clause of K.S.A. 33-209(a).

When the *Falen* court overturned *Bi-State*, it did so by addressing the limitations language under K.S.A. 60-513(b). There, the district court granted summary judgment in favor of the title company because the Falens' negligence claims were barred by the two-year statute of limitations. The lower court found the Falens had notice their deed was faulty when the deed was recorded, but they failed to raise their negligence claims within two years. The Falens presented conflicting testimony because they alleged the title company never asked them to review or approve the deed but to merely sign it. Our Supreme Court found the contents of the deed could not be conclusive as a matter of law to find the Falens reasonably ascertained they were injured. 308 Kan. at 588. In doing so, the *Falen* court abrogated *Bi-State*. *Falen*, 308 Kan. at 587. The *Falen* court concluded

21

the deed was only one factor to consider in determining when the Falens had reasonably ascertained their injury. 308 Kan. at 587-88. The *Falen* court noted summary judgment was inappropriate because several other contested facts, including the conflicting testimony, presented a genuine dispute of the material facts. 308 Kan. at 587-88.

Here, the district court erred when it relied on *Bi-State*. First, *Bi-State* is irrelevant to FVA's claims of fraudulent transfer. *Bi-State* addresses the two-year limitations period for negligence claims set out in K.S.A. 60-513(a)-(b), not claims of fraudulent transfer under the UFTA. *Bi-State*, 26 Kan. App. 2d at 519. Additionally, *Bi-State* was abrogated by *Falen*. *Falen*, 308 Kan. at 587.

Even so, the district court's error was harmless. *Falen* also does not apply here because it addressed the limitations language of K.S.A. 60-513(b), not the savings clause in K.S.A. 33-209(a). Unlike *Falen*, the issue here is not when FVA could reasonably ascertain when FVA was injured by Paul's transfer of his property interests. Compare K.S.A. 60-513(b) and K.S.A. 33-209(a). Instead, we must determine whether the transfers "could reasonably have been discovered" by FVA within one year after the transfer and whether FVA has presented a genuine dispute of material fact. See K.S.A. 33-209(a); *Northern Natural Gas Co.*, 296 Kan. at 934 (finding summary judgment appropriate when there is no genuine issue of material fact).

As discussed earlier, FVA could presumably bring its claim of fraudulent transfer under K.S.A. 33-204(a)(1) for the Leawood property, but not the Lakehouse or Loch Lloyd properties. Nevertheless, FVA presents no facts to dispute it could reasonably have discovered the transfer of the Leawood property within one year after the deed was recorded with the Johnson County Register of Deeds. Paul transferred his interests in the Leawood property in March 2011, and the deed was available for anyone to review by contacting the register of deeds. FVA raised its fraudulent transfer claim more than five

years later when it sued Lori on August 31, 2016. FVA does not challenge these facts on appeal.

Instead, FVA argues "it is laughable" for it to investigate whether Paul transferred property in Johnson County. FVA's argument is unsupported by pertinent authority and the appellate record, so FVA has waived this argument. See *University of Kan. Hosp. Auth.*, 301 Kan. at 1001 (failure to support a point with pertinent authority is akin to failing to brief the issue); *Friedman*, 296 Kan. at 644-45 (failure to provide factual support is a failure to brief).

Transfer of any property from Paul to an insider like Lori could alert FVA to the possibility of a fraudulent transfer based on actual intent. K.S.A. 33-204(a)(1), (b)(1). Although no Kansas caselaw addresses what is "reasonable discovery" under K.S.A. 33-209(a), it seems perfectly reasonable for FVA to check the register of deeds in Paul's county of residence to see if he transferred local property to a relative—particularly when FVA was actively engaged in litigation against Paul in that county and in federal district court. Here, FVA failed to timely do so even though the conveyance may have indicated Paul's transfer to Lori was fraudulent given the pending litigation. FVA is not entitled to relief under the savings clause of K.S.A. 33-209(a).

*FVA fails to brief its arguments of estoppel and limited discovery.*

FVA seeks relief from the limitations period set out under K.S.A. 33-209(a)-(b) by relying on the same claims of estoppel it unsuccessfully raised in its negligence claims. FVA again fails to support its arguments with citation to the appellate record. FVA waives this argument. *Friedman*, 296 Kan. at 644-45.

FVA also argues the district court prevented it from conducting substantive discovery and this limited FVA's ability to present additional evidence to prevent

23

summary judgment. The course and scope of discovery is left to the sound discretion of the district court. *Miller v. Johnson*, 295 Kan. 636, 687-88, 289 P.3d 1098 (2012). FVA presents no arguments as to how the district court abused this discretion, so FVA has waived this argument. See *Gannon*, 305 Kan. at 868 (party asserting the trial court abused its discretion bears the burden of showing such abuse of discretion).

*The district court did not err in granting summary judgment against FVA's claims of conspiracy to commit fraudulent transfers and aiding and abetting fraudulent transfers.*

FVA raised claims of conspiracy to commit fraudulent transfers and aiding and abetting fraudulent transfers, but the district court found FVA was not entitled to these claims when it granted summary judgment. The district court found two circumstances outside of Kansas law where accessory liability under fraudulent transfers could be established—first, when state law allows recovery for a conspiracy claim for any unlawful act, not just a tort; second, when liability is limited to relief from a combination of persons acting to increase a creditor's damages in the hope the creditor will not pursue the claim. Even so, the district court found, without explanation, neither circumstance applied in this case.

The district court next refused to recognize a cause of action based on conspiracy to commit fraudulent transfers or aiding and abetting fraudulent transfers. The district court found Kansas law requires the commission of some wrong giving rise to a cause of action independent of the conspiracy, citing *Stoldt v. City of Toronto*, 234 Kan. 957, 678 P.2d 153 (1984). The district court also found aiding and abetting is a theory used to impose vicarious liability for concerted action, citing *State ex rel. Mays v. Ridenhour*, 248 Kan. 919, 936, 811 P.2d 1220 (1991). In granting summary judgment against FVA's claims, the district court reasoned a fraudulent transfer was not a tort, so Kansas law did not allow FVA to recover for either conspiracy to commit a fraudulent transfer or aiding and abetting fraudulent transfers.

24

FVA argues the district court erred in granting summary judgment. When reviewing a district court's decision of summary judgment, we apply the summary judgment standards as previously mentioned. *Patterson*, 307 Kan. at 621. If a district court reaches the correct result, its decision will be upheld even though it relied upon the wrong ground or assigned erroneous reasons for its decision. *Gannon*, 302 Kan. at 744. Here, the district court reached the correct result despite its reasoning.

> *Even if FVA had a cause of action for conspiracy to commit a fraudulent transfer, FVA cannot recover because summary judgment against the underlying claim of fraudulent transfer was appropriate.*

Outside of Kansas, there is a split of authority on whether a creditor may bring a cause of action for a conspiracy to commit a fraudulent transfer. A majority of states find it inappropriate to allow recovery for a conspiracy claim by finding an unlawful transfer is a wrongful act because doing so effectively expands the remedies under the UFTA. See, e.g., *Forum Ins. Co. v. Devere Ltd.*, 151 F. Supp. 2d 1145, 1148 n.7 (C.D. Cal. 2001). A minority of states have found the adoption of the UFTA modified their states' common-law rules to allow a creditor to recover for a conspiracy claim when the underlying cause of action constitutes a "legal wrong." See, e.g., *Double Oak Const., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003).

In Kansas, a civil conspiracy is an actionable tort. *Stoldt*, 234 Kan. at 967. A claim for civil conspiracy requires the commission of some wrong giving rise to a cause of action independent of the conspiracy. 234 Kan. at 967. Yet Kansas courts have never determined whether conspiracy can extend to include conspiracy for fraudulent transfers. FVA asks this court to recognize this cause of action. While there remain compelling arguments for and against recognizing conspiracy to commit fraudulent claims, we decline to do so based on this case.

25

Even if we presumed Kansas law granted a cause of action in civil conspiracy to commit a fraudulent transfer, FVA is not entitled to relief from summary judgment. For FVA's conspiracy claims to survive, FVA's underlying cause of action must be some wrong surviving independent of the conspiracy. See *Stoldt*, 234 Kan. at 967. As detailed above, summary judgment against FVA's fraudulent transfer claims is appropriate. Since those claims do not survive, FVA's conspiracy claims cannot either. See *Stoldt*, 234 Kan. at 967.

> *Even if FVA had a cause of action for aiding and abetting a fraudulent transfer, FVA cannot recover because summary judgment against the underlying claim of fraudulent transfer was appropriate.*

Similarly, courts outside of Kansas are divided on whether a party may raise a claim of aiding and abetting a fraudulent transfer. Compare *Warne Investments, Ltd. v. Higgins*, 219 Ariz. 186, 196, 195 P.3d 645 (Ct. App. 2008) (finding the UTFA does not create an independent cause of action for aiding and abetting a fraudulent transfer), with *In re Restaurant Development Grp., Inc.*, 397 B.R. 891, 898 (Bankr. N.D. Ill. 2008) (finding Illinois court decisions recognize aiding and abetting liability for fraudulent transfer).

As for aiding and abetting generally, Kansas courts have explained aiding and abetting includes the following elements:

> "'(1) [T]he party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation.'" *State ex rel. Mays*, 248 Kan. at 936 (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 [D.C. Cir. 1983]).

Kansas courts have not determined whether a creditor may bring a claim of aiding and abetting for a claim of fraudulent transfer. There are compelling arguments for and

against supporting a cause of action for aiding and abetting a fraudulent transfer. We need not determine whether Kansas law allows such a claim. Even if FVA had the right to raise the claim, FVA's aiding and abetting claim would not survive summary judgment. FVA failed to show there is a genuine dispute of material facts reflecting Paul's transfer of property was a wrongful act causing injury to FVA. See *State ex rel. Mays*, 248 Kan. at 936. As we have discussed above, FVA does not survive summary judgment on its underlying fraudulent transfer claims, so FVA's claims of aiding and abetting those transfers naturally fail as well.

Affirmed.